PRICE, Judge.
Defendant, Danny Goodson, was indicted by the Bossier Parish Grand Jury on one count of aggravated rape (La.R.S. 14:42). The defendant was arraigned and pled not guilty. Following trial by jury the defendant was found guilty as charged and sentenced to mandatory life imprisonment. The defendant has appealed his conviction on the basis of two assignments of error.
FACTUAL BACKGROUND:
During the ten-month period between November 1980 and early September 1981, a series of rapes occurred in the Highland area of Shreveport in Caddo Parish. Police authorities theorized the rapes were being perpetrated by one individual and the news media in its extensive coverage of these events began referring to the sought after criminal as the “Highland Rapist.” The defendant herein, Danny Goodson, was arrested on September 7, 1981, in the Highland area a short distance from the scene of a rape that had been reported a few moments earlier.
Goodson was interrogated for several days and confessed to twelve rapes, burglaries, and attempted rapes in the Highland area. He was also interrogated by Bossier City authorities and confessed to the July 25,1981, rape of a 20-year-old woman which gave rise to the conviction now being reviewed. Goodson was indicted on September 29, 1981, by the Caddo Parish Grand Jury on six counts of aggravated rape, two counts of attempted rape, two counts of aggravated crime against nature, and two counts of attempted aggravated burglary and simple burglary. He was arraigned and pled not guilty on all charges on October 9, 1981. All of these events as well as the subject charge in Bossier now under review were well publicized by Shreveport newspapers, television, and radio. Good-son’s name was published as well as his photograph.
Following his indictment by the Bossier Parish Grand Jury on September 25, 1981, for aggravated rape and his plea of not guilty at arraignment on October 5, 1981, Goodson filed a pre trial motion for a change of venue. The motion was denied and writs were granted by the Louisiana Supreme Court who ultimately vacated the trial court’s ruling and remanded the case with instructions to defer a ruling of the motion for change of venue until after completion of voir dire. State v. Goodson, 412 So.2d 1077 (La.1982). Defendant’s trial began on June 14,1981, and at the conclusion of the voir dire, the motion for change of venue was again urged and overruled. The trial continued and resulted in defendant’s conviction of the crime charged.
ASSIGNMENT OF ERROR NO. 1:
Goodson first complains of the trial court’s failure to sustain his challenge for cause as to prospective jurors James A. Fromme, Arlan R. Neill, and Myra G. Odum. These challenges were based on guidelines laid down by the Supreme Court in its opinion remanding with instructions to the trial court to defer its ruling on the motion for a change of venue until completion of the voir dire. The Supreme Court in State v. Goodson, supra, directed that the voir dire examination be governed by the American Bar Association’s Standards Relating to Fair Trial and Free Press, Sec. 8-3.5, 1978, and to follow these guidelines:
Both the degree of exposure and the prospective juror’s testimony as to state of mind are relevant to the determination of acceptability. A prospective juror testifying to an inability to overcome preconceptions shall be subject to challenge for cause no matter how slight the exposure. If the prospective juror remembers information that will be developed in the *1176 course of the trial, or that may be inadmissible but does not create a substantial risk of impairing judgment, that person’s acceptability shall turn on the credibility of testimony as to impartiality. If the formation of an opinion is admitted, the prospective juror shall be subject to challenge for cause unless the examination shows unequivocally the capacity to be impartial. A prospective juror who has been exposed to and remembers reports of highly significant information, such as the existence or contents of a confession, or other incriminating matters that may be inadmissible in evidence, or substantial amounts of inflammatory material, shall be subject to challenge for cause without regard to the prospective juror’s testimony as to state of mind.
Prospective juror Fromme testified during voir dire that he had heard accounts of the defendant’s involvement in the Highland area rapes but was unfamiliar with the instant offense because he had been out of town. Mr. Fromme testified that he was not familiar with the specific facts of the Highland rapes, only that he remembered hearing the defendant’s name. Mr. Fromme testified repeatedly that he disassociated the defendant from the rapes in the Highland area. For example we quote his testimony in part:
Q Okay. Knowing that — that the — Mr. Goodson is the fellow that was connected at least by the newspaper with those incidents over in the Highland area, can you totally put that out of your mind?
A I believe I could, sir.
¡je ¡js ¡j¡ ⅜ ¡js ¡j¡
A I don’t really think so. I think I would accept each one as they’re — what the — what he’s being charged for. This is Bossier. This is where I live, and this is what I would be more concerned with. And, like I say, I read the papers, but I don’t read everything that’s in the papers.
* * * * * *
VOIR DIRE EXAMINATION BY MR. BROWN
Q Do you have any preconceived opinion as to guilt or innocence in this case?
A No, sir.
Q Will you judge this case solely on the basis of the evidence presented to you?
A Yes, sir.
Q Without any kind of uh — idea about what may have been said in the newspaper about this defendant anywhere else?
A Yes, sir. I believe I could.
[[Image here]]
THE COURT: Do you remember any significant details of the Shreveport offenses?
A No, sir, I don’t.
THE COURT: Do you know any significant detail of the Bossier offense for which this case is about—
A No, this one I—
THE COURT: —that is the Bossier charge?
A This one I wasn’t even familiar. I don’t — I don’t really remember reading anything about this.
THE COURT: Has the material that you have read, has it appeared to be inflammatory to you?
A Uh — I would say probably some of the stuff that was put in the Shreveport paper about the Highland area. I don’t know what you mean about inflammatory. If you mean does this cause me to form a judgment just by what I read, I don’t not from what I read.
¡je * * ¡j¡ * *
THE COURT: Well, let me just put it to you this way. If you were selected as a juror, and at that trial there was no mention of any evidence concerning the Highland rapist or any rapes that happened in Shreveport, would you be able to decide the facts of this case in total disregard of what had happened over in Shreveport, Caddo Parish, and in total disregard of what you read in the newspaper?
A I believe I could from the evidence that was given to me.
*1177 THE COURT: All right. Now, I want to know is there any doubt or equivocation in your mind about that?
A No, sir.
The Supreme Court ruled that both the degree of exposure and the prospective juror’s state of mind are relevant to the determination of acceptability. In the instant case, Mr. Fromme knew little about either the Highland offenses or the offenses involved at present. He appeared unaware of any of the victims or of the defendant’s confession. Mr. Fromme’s exposure to the case was minimal. In light of his numerous assertions that he could be open-minded with regard to the defendant, it must be said that his state of mind in no way prejudiced the defendant. Using the guidelines set forth by the Supreme Court, the trial court acted correctly in denying the defendant’s challenge for cause.
A second prospective juror for whom challenge for cause was denied was Arlan R. Neill. Mr. Neill testified that he was aware of the defendant’s possible connection with the Highland rapist, having read most of the accounts that were published at that time. He knew the general range of ages of the Highland victims. Importantly, Mr. Neill was not aware of any confession made by the defendant to the authorities. Although Mr. Neill was familiar with the Highland rapes, he was emphatic that he would judge the defendant on the evidence presented. In particular:
Q Well, did—did—did you find ' that from reading what you read about the incidences, did you create a sense of outrage or a sense of ill will toward the man identified in the paper as Danny Good-son?
A No. I can’t say that. Uh—I think my reaction was, “Well, the authorities apparently believe that they have, you know, gotten the man responsible for the—the crimes.” I can’t say that I’m not aggravated over the fact that such crimes were committed, but I don’t associate that necessarily with, you know, the individual. I’m well aware of trial process and the fact that, you know, the defendant is innocent until proven guilty.
Q Yes, sir. Now, with remembering all that you’ve read about it in the paper, knowing that this is Danny Goodson that’s on trial here, and knowing that he’s accused of several rapes in Shreveport, if you’re chosen as a juror, can you put that totally out of your mind and—while we’re sitting through this trial?
A I would judge the man on the evidence that’s presented.
Q Well, what I’m asking you, though, is is that going to be in your mind—
A Is if—is the other things that I have read going to cloud my mind in the issue. Q Well, are you going to be thinking about—are they going to, say, cross your mind while you’re considering this?
A I don’t think so.
Q Do you think that possibly, say just as a hypothetical situation, that you’re listening to this evidence in this case, and it came down to a—it was close—it was a close case as far as the proof, you were— you were right there on the border line, would the fact that you remembered that he’s accused of several rapes in Shreveport, would that make you more likely to believe he was guilty of this rape?
A No. It’s entirely two different questions.
Again, considering the Supreme Court’s guidelines concerning exposure and state of mind, it is apparent that the trial court ruled correctly in denying the challenge for cause.
The third and final prospective juror for whom a challenge for cause was denied was Myra G. Odum. Mrs. Odum testified that she had only heard the defendant’s name in connection with the Highland rapes, but was unaware of what the Highland rapes were about. She was equivocal about her ability to remain impartial as evidenced by the following:
Q Now, is that going to—are you going to be able to put that out of your mind when you—if you’re chosen as a juror here? Are you going to be able to put it out of your mind that Mr. Goodson has *1178 been accused of some rapes in Caddo Parish?
A I would hope so. I — I’m not sure. I guess — I guess I could. I—
Q Well, if — if—if you can’t, we’d like to — there’s no right or wrong answer—
A Um hum. (Affirmative)
Q —to these questions. We just want an honest answer.
A I would say I would probably be able to put that out away from everything else.
Q Okay. Let me ask — ask you this way. Now, if you were listening to the evidence here in this case, and it came down to where it was a real close case, you were having a hard time deciding because the evidence was close, and you were right there on the border line between guilty and not guilty. Would the fact that you remembered Mr. Goodson was accused of several other rapes somewhere else, would that make you think that he’s more likely had done this one?
A Probably.
Q So you think that it could be a possibility that if you were chosen as a juror here in this case, that what you know about Mr. Goodson from what you’ve read and heard, could make a difference in your decision.
A Possibly.
Upon defendant’s challenge for cause, the trial court ruled that no foundation had been laid to justify his challenge; that it was not shown that Mrs. Odum had been highly exposed or that she had already formed an opinion concerning the defendant’s guilt or innocence. We agree with the trial court. Mrs. Odum exhibited no prejudicial opinions regarding the defendant. She appeared willing to apply the law to the facts of this instant charge without reference to other charges relating to the defendant.
The trial court in all three instances followed the guidelines set forth by the Supreme Court in State v. Goodson, supra. The jurors challenged either had little exposure to the Highland rapes or exhibited no prejudice toward the defendant.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 2:
By his final assignment of error, defendant argues that the trial court erred in failing to grant defendant’s motion for change of venue. It is the defendant’s position that media coverage of the Highland rapist and the defendant’s association with that coverage, prejudiced the defendant’s right to a fair and impartial trial in Bossier Parish.
Extensive media coverage was given to the Highland rapist during the months preceding and following defendant’s arrest. The defendant was immediately identified as the person the police believed to be the Highland rapist. The defendant’s confessions were widely publicized.
On the original motion to suppress, the trial judge found that although the media publicity had been extensive and that the Shreveport media had coverage over the entirety of Bossier Parish, the relator had not shown that the reports were inflammatory or that prejudice existed against him in the Bossier Parish public mind. The trial court also noted that the jury would be drawn from the entire parish of Bossier, much of which is situated some distance from the Highland area of Shreveport in Caddo Parish, and the site in Bossier City where the charged offenses occurred.
The Louisiana Supreme Court as mentioned earlier, granted writs to review the trial court’s ruling. The Supreme Court ruled that the trial court should delay ruling on the motion for change of venue until after voir dire. The Court gave the following instructions:
Since there is a significant possibility that individual jurors will be ineligible to serve because of exposure to potentially prejudicial material, the examination of each juror with respect to exposure shall take place outside the presence of other chosen and prospective jurors. An accurate record of this examination shall be kept by court reporter or tape recording *1179 whenever possible. The questioning shall be conducted for the purpose of determining what the prospective juror has read and heard about the case and how any exposure has affected that person’s attitude toward the trial, not to convince the prospective juror that an inability to cast aside any preconceptions would be a dereliction of duty.
Jury selection was conducted pursuant to these instructions. An accurate record of the examination was kept. That record reveals that of the 52 jurors called in the selection of 12 jurors, only 16 were challenged for cause due to publicity. The transcript of voir dire examination indicates that the majority of the venire was either unaware or unconcerned about who the defendant was.
The motion for change of venue was properly denied based on the instructions provided by the Supreme Court. This assignment of error is therefore without merit.
For the foregoing reasons, the conviction and sentence of defendant, Danny Goodson, are AFFIRMED.
AFFIRMED.