382 So.2d 1384 (1980)
STATE of Louisiana
v.
Wayne Robert FELDE.
No. 66482.
Supreme Court of Louisiana.
April 7, 1980.
Nathaniel Graves Thomas, Shreveport, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul J. Carmouche, Dist. Atty., B. Woodrow Nesbitt, Jr., Asst. Dist. Atty., for plaintiff-respondent.
de la HOUSSAYE, Justice Ad Hoc.
On November 15, 1976, defendant Wayne Robert Felde was charged with the crime of first degree murder of a Shreveport police officer in violation of La.R.S. 14:30. He pleaded not guilty and not guilty by reason of insanity. A sanity commission was appointed and its findings indicated the defendant was capable of assisting in his own defense. On February 21, 1979, defendant's *1385 court appointed counsel filed a Motion for a Change of Venue pursuant to Article 622 of the Louisiana Code of Criminal Procedure which was overruled. After defendant's request for a change of court appointed defense counsel was denied, private counsel was retained by one of defendant's sisters. Retained counsel filed a second Motion for a Change of Venue on August 31, 1979 and a Motion to Recuse the Caddo Parish judiciary on September 4, 1979. The Motion to Recuse was denied by Judge Gradon J. Kitchens, Jr. and writs to this Court on the motion were denied. State v. Felde, 375 So.2d 112 (La.1979). The second Motion for a Change of Venue was heard and denied by Judge James Clark on September 17, 1979. After three continuances, the trial date was set for January 9, 1980. On December 3, 1979, defendant filed a third Motion for Change of Venue and a Motion for a Continuance which were both denied by Judge Eugene W. Bryson, Jr. on December 24, 1979. Defendant filed for a Stay of District Court Proceedings on December 31, 1979 pending his application for Remedial Writs before this Court on the denial of his third Motion for a Change of Venue. We granted the writ and stayed the District Court proceedings in order to determine whether the pre-trial publicity of defendant's trial warranted a change of venue as specified under La.C.Cr.Pr. Article 622. State v. Felde, 378 So.2d 1375 (La.1980).
Defendant asserted in his application that he was denied his constitutional rights to a fair and impartial trial due to the continuing pre-trial publicity of his trial. See Louisiana Constitution of 1974, Article 1, Section 16.[1] To prevent this asserted injustice, defendant filed a Motion for a Change of Venue of his trial on three different occasions throughout the lengthy preliminary stages of his prosecution. Louisiana Code of Criminal Procedure, Article 622 reads as follows:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
In order for a defendant to be entitled to have his trial moved to another parish he must prove more than a mere knowledge by the public of facts surrounding the offense. The burden of proof is on the defendant to show that there exists such prejudice in the collective mind of the community that a fair trial is impossible. State v. Sonnier, 379 So.2d 1336 (1979), on rehearing 379 So.2d 1368 (La.1980); State v. Matthews, 354 So.2d 552, (La.1978); State v. Sheppard, 350 So.2d 615 (La.1977). Whether the defendant has made the requisite showing is a question addressed to the trial court's sound discretion which will not be disturbed on review in the absence of an affirmative showing of error and abuse of discretion. State v. Sonnier, supra; State v. Matthews, supra; State v. Sheppard, supra.
A number of factors must be considered in determining whether to change venue. As this Court stated in State v. Bell, La., 315 So.2d 307: "Some relevant factors in determining whether to change venue are (1) the nature of pretrial publicity and the particular degree to which it has circulated in the community, (2) the connection of government officials with the release of the publicity, (3) the length of time *1386 between the dissemination of the publicity and the trial, (4) the severity and notoriety of the offense, (5) the area from which the jury is to be drawn, (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire." State v. Bell, 315 So.2d 307, at 311 (La.1975).
In the present case, the defendant alleges the following facts surrounding his trial have tended to promote prejudice in the public mind: that the victim was a rookie policeman who had been on the force only eight months; that this incident was the first shooting of a police officer in the community in ten years; that there was a vast amount of publicity surrounding his prosecution and the subsequent prosecution and conviction of his sister who was charged in connection with the incident; that there were two subsequent shootings of other police officers during the preliminary stages of defendant's prosecution in which the media coverage of all three shootings tended to promote an atmosphere of exaggerated law and order consciousness in the community; that the cumulative effect of these factors and the overwhelming amount of new coverage over the year of his prosecution created such an atmosphere as to render the attainment of a fair and impartial trial impossible.
Most of these facts were postulated to the court in defendant's second Motion for a Change of Venue in September, 1979 before Judge Clark. Subsequent to the denial of that Motion, additional news coverage, pertaining to the conviction of defendant's sister and the convictions of other individuals, was alleged to reinforce the emotionally charged atmosphere of defendant's own trial. These subsequent facts prompted the filing of a third request for a venue change. As a result of this third filing, Judge Bryson was called to review the evidence presented to Judge Clark and the events occurring after Judge Clark's ruling in September, 1979. Judge Bryson included the seven factors enumerated in State v. Bell, supra and referred to the opinion of Judge Clark which divided the nature of publicity, one of the Bell factors, into four phases.
The first factor presented in Bell is the nature of pre-trial publicity and the degree circulated. Judge Clark had previously found the publicity extensive and widely circulated. Judge Bryson noted the first period or phase of media coverage included items of the shootings of the officer, reports and pictures of the accused and the officer's funeral. Phase two concerned scattered coverage of defendant's hospitalization, his plea and dissatisfaction with previous counsel. The third phase was defined as consisting of extensive news coverage of the filing of a second Motion for Change of Venue and the subpoenaing of numerous media personnel, of the filing of a Motion to Recuse all the judges in the first judicial district, and of the filing of a Motion to Close the Court to the Public. Judge Bryson noted that during this phase, defendant's sister was tried and defendant had waived his Fifth Amendment rights to testify on her behalf at her trial. During the fourth phase, Judge Bryson discussed the filing of the third Motion to Change Venue in which there was no publicity connected with defendant's case but publicity was found to surround the trials and convictions in the other police shooting cases. More media coverage was found when defendant's counsel subpoenaed sixty-five newspaper representatives and personnel from television stations and issued subpoenas duces tecum ordering the production of media records, tapes and files.
After reviewing all evidence of these four phases, Judge Bryson determined that there was insufficient showing that the reports were inaccurate, inflammatory or unobjective. The publicity was also determined to be generated either directly or indirectly by defense counsel in the filings presented to the court. The court found no connexity in the publicity generated by the other ongoing trials and the prosecution of the defendant.
*1387 The second test enumerated in State v. Bell, supra, is the connection of governmental officials and the release of the publicity. While police officials were found to have issued releases to the press, the reports were determined informational and no releases were issued by the District Attorney's office.
Thirdly, the length of time between the dissemination of publicity and the trial was fourteen months. This period was ruled by Judge Bryson to be sufficient for any inflammatory effects to have subsided.
The charge of murder is the most serious offense in the law and it was not disputed as being an important factor for consideration by the court.
The area from which the jury was to be drawn was the Parish of Caddo, a community of about 250,000 persons.
The sixth factor analyzed was other events occurring in the community which could affect or reflect citizen attitudes. It was contended that the subsequent shootings of other police officers reflected an air of prejudice which would affect the ability to draw a fair and impartial jury. Judge Bryson found this contention to be erroneous and the assertion speculative in nature.
The final analysis concerned anything likely to affect the truth and veracity of the prospective jurors on voir dire. Testimony was presented by two experts in poll taking who indicated to the court that potential jurors would tend not to be truthful during voir dire. The court declined to give much weight to the testimony and found instead that the experts lacked personal observations of the community's attitudes and personal knowledge of a voir dire examination. It should be noted that a "dry run" voir dire examination was not requested by defendant or performed by the court on its own motion. Other testimony presented at the hearing was from two attorneys who defended the individuals charged with the shootings of two other police officers. Their testimony revealed a feeling that jurors polled in each respective trial were less than candid in their voir dire examinations. Judge Bryson declined to find merit in their testimony, finding it to be biased in favor of their advocacy for their clients.
The trial judge held that defendant had failed to achieve his burden of proof to present evidence of prejudice existing in the public mind. In summary, the court found the defendant's allegations to be no more than mere conjecture and speculation.
The extensive review of the evidence by the able trial judge in light of the tests enumerated in State v. Bell, supra presents a very close question to this Court. The trial court conducted a thorough and conscientious determination of lengthy and tedious proceedings. Our review of the transcripts indicates, however, that defendant made a sufficient showing of the great likelihood that prejudice was significantly possible in the community.
We note the extensive publicity occurred around certain filings of the defendant. We cannot agree, however, that all the activity might have been attributable to tactics used by defense counsel. The defense counsel had no bearing on the scheduling or determinations of two trials of others accused of police shootings, nor defendant's choice to testify at his sister's trial. While the flurry of media activity may have surrounded particular events, the activity of reporting was extensive and consistent for over a year. We note that over two hundred news articles were listed in the defendant's brief. The articles continued to be published even during the filing of supplemental briefs after arguments were heard before this Court. The amount of publicity is indeed overwhelming and cause for review.
We also find the subsequent shooting of other police officers in the area, totaling three serious crimes in the community in one year, to be outstanding factors in the present case The publicity generated from these convictions on the eve of defendant's trial is of relevance.
The fact that defendant's sister was charged with buying the gun used in the murder and her sentence being publicized weeks before the defendant's trial are also *1388 determinative of this Court's ruling. The accounts of her conviction and sentence served as a cumulative effect upon the possible attitudes of the community toward the defendant's innocence.
We also note that the state has not opposed a change of venue if it were in the interest of justice but has consistently requested that the trial begin expeditiously.
In summary, we determine the necessity for the change of venue to be predicated upon the following particular and unique facts of this case: the voluminous pre-trial publicity surrounding the defendant's trial; the cumulative effects of publicity surrounding the trials of subsequent defendants involving the shooting of police officers and the trial of the defendant's sister who was implicated in the present case which may have caused a connexity in the public's mind on the innocence of defendant; and in the interest of judicial economy. We therefore find that under the particular facts of this case, the defendant has made a sufficient showing of a strong likelihood that prejudice may exist in the public mind. In the interest of judicial economy, we direct the district court to order a change of venue for defendant's trial.

DECREE
IT IS THEREFORE ORDERED that the judgment of the district court be vacated and set aside and that the district court order a change of venue in this case.
NOTES
[1] Louisiana Constitution 1974, Article 1, Section 16:

Every person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy, public, and impartial trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law. No person shall be compelled to give evidence against himself. An accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf.