412 So.2d 1077 (1982)
STATE of Louisiana
v.
Danny GOODSON.
No. 81-K-3094.
Supreme Court of Louisiana.
April 5, 1982.
*1078 S. Patrick Phillips, Indigent Defender Office, Bossier City, for relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Dist. Atty., for respondent.
DENNIS, Justice.
The question presented here is whether the relator, who is charged in the Twenty-Sixth Judicial District Court for the Parish of Bossier with the aggravated rape of a Bossier City woman, should be granted a change of venue because a fair and impartial trial cannot be obtained in that parish due to the media publicity concerning his involvement in numerous rapes in a neighboring parish.
In Caddo Parish, beginning in November, 1980, a white man between 25 and 33 years old committed a series of rapes in an 8 to 10 block section of the city of Shreveport known as the Highland area. A number of months after the first offense the Shreveport police and the news media began to refer to the assailant as the "Highland Rapist." During the next ten months, nine rapes and three attempted rapes within the area were attributed to the Highland Rapist. The police conducted what their chief claimed was the most intensive investigation in the history of the department, at one point flooding the Highland area with twenty plainclothes officers. Hypnosis of victims, community seminars, and wholesale street encounters were resorted to in an effort to break the case. The news media made thorough reports of each crime and the law officers' efforts to apprehend the rapist. As the rapist continued to elude the police and the dread of the local residents mounted, the story of the Highland Rapist received increasingly prominent coverage by both electronic and print media.
In August of 1981, authorities in neighboring Bossier Parish were reported to be comparing notes with Shreveport detectives in Caddo Parish to determine if there was a possible link between the Highland Rapist and the perpetrator of two rapes in the Old Bossier section of Bossier City. A Shreveport detective was quoted in the local media as stating that there was a "possibility" that the two cities' rape cases were related "but from what I've compared so far, they are totally different cases." Shreveport, the site of the Highland area rapes, is located on the western bank of the Red River in Caddo Parish. Bossier City, the site of the rape which is the subject of this case, is located across the river from Shreveport in Bossier Parish. Bossier Parish is 53 miles long and has a population of approximately 80,700. Circulation and broadcast areas of Shreveport newspapers and television stations extend over neighboring Bossier Parish.
Relator, Danny Goodson, was arrested on September 7, 1981 in the backyard of a house in the Highland area shortly after another rape had occurred nearby. After receiving a prowler report from a house in the vicinity, police officers stalked Goodson with a tracking dog and in dramatic climax ran him down on foot. During the next three days Goodson was interrogated and confessed to twelve rapes, burglaries, and attempted rapes in the Highland area in the preceding ten months. The Shreveport Chief of Police announced that "the Highland *1079 rapist is now in the jail in Shreveport, Louisiana." On September 29, 1981, Goodson was indicted by a Caddo Parish grand jury in an eleven count indictment charging him with six counts of aggravated rape, two counts of attempted aggravated rape, two counts of aggravated crime against nature and two counts of attempted aggravated burglary and simple burglary. Goodson entered a not guilty plea to each of the charges against him during his arraignment in Caddo Parish on October 9, 1981. All of these events were well publicized by Shreveport newspapers, television and radio. Goodson was identified by name in each news story and his photograph appeared in the newspapers on several occasions.
Following Goodson's arrest in Shreveport, he was interviewed by Bossier City police officers. On September 9, 1981, in at least one newspaper article and a television news broadcast, Goodson was reported to have admitted his involvement in the July rape of a Bossier City woman. On September 25, 1981 he was indicted on one count of aggravated rape by a Bossier Parish grand jury. On October 5, 1981 he was arraigned and pleaded not guilty. His trial was set for October 26, 1981 but continuances were granted to November 30, 1981 and December 4, 1981. Relator filed a motion for a change of venue which, after a hearing, was denied on November 17, 1981. This court granted a supervisory writ to review the trial court's ruling for constitutional error on December 8, 1981.
At the hearing on the motion to change venue, the defendant did not call any witnesses. However, he introduced without objection thirty-five Shreveport newspaper articles and one hundred and eight pages of transcripts of newscasts by Shreveport television stations. The newspaper articles in the record were published between June 1, 1981 and October 21, 1981. Until relator's arrest on September 7, 1981, the articles were concerned solely with the activities of the Highland Rapist, the Shreveport police, and the residents in the Highland area of Shreveport. With the relator's arrest he was immediately identified as the person the police believed to be the Highland rapist. The publicity of his confessions, his indictments in both Bossier and Caddo Parishes, and the related pretrial proceedings most certainly identified him in the public mind as the notorious Highland rapist. Television and newspaper reports indicated that Goodson was suspected of two rapes in Bossier Parish, and that he had admitted involvement in and been indicted for one of them which is the subject of this case. However, because the Bossier City rapes were considered isolated incidents at the time of their commission, news reports which later linked Goodson to them were less sensationalized than reports linking him to the more publicized series of rapes in the Highland area of Shreveport.
The trial judge found that although the media publicity had been extensive, and the Shreveport media has coverage over the entirety of Bossier Parish, the relator had not shown that the reports were inflammatory or that prejudice existed against him in the Bossier Parish public mind. The trial court also noted that the jury would be drawn from the entire parish of Bossier, much of which is situated some distance from the Highland area of Shreveport in Caddo Parish and the site in Bossier City where the charged offense occurred.
The constitutional standard of fairness requires that a defendant have "a panel of impartial, `indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). Qualified jurors need not, however, be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).
"`To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' Irvin v. Dowd [366 U.S.] at 723, *1080 81 S.Ct. 1639 [1642], 6 L.Ed.2d 751." Murphy v. Florida, 421 U.S. at 800, 95 S.Ct. at 2036, 44 L.Ed.2d at 595.
At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality. Murphy v. Florida, supra, at 800, 95 S.Ct. at 2036.
In unusual circumstances prejudice against the accused may be presumed. Prejudice was presumed in the circumstances under which the trials in Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); and Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), were held. As the high court in Murphy v. Florida, supra, explained:
"* * * In those cases the influence of the news media, either in the community at large or in the courtroom itself, pervaded the proceedings. In Rideau the defendant had `confessed' under police interrogation to the murder of which he stood convicted. A 20-minute film of his confession was broadcast three times by a television station in the community where the crime and the trial took place. In reversing, the Court did not examine the voir dire for evidence of actual prejudice because it considered the trial under review `but a hollow formality'the real trial had occurred when tens of thousands of people, in a community of 150,000, had seen and heard the defendant admit his guilt before the cameras.
"The trial in Estes had been conducted in a circus atmosphere, due in large part to the intrusions of the press, which was allowed to sit within the bar of the court and to overrun it with television equipment. Similarly, Sheppard arose from a trial infected not only by a background of extremely inflammatory publicity but also by a courthouse given over to accommodate the public appetite for carnival. The proceedings in these cases were entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of the mob. * * * To resolve this case, we must turn, therefore, to any indications in the totality of circumstances that petitioner's trial was not fundamentally fair." Murphy v. Florida, 421 U.S. at 799, 95 S.Ct. at 2036, 44 L.Ed.2d at 594.
That prejudice against the accused may be presumed from unusual circumstances is recognized by Louisiana law. In deciding whether to grant a change of venue the court must consider whether prejudice, influence, or other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial. La.C.Cr.P. art. 622. See State v. Rodrigue, 409 So.2d 556 (La.1982); State v. Bell, 315 So.2d 307 (La. 1975); State v. Felde, 382 So.2d 1384 (La. 1980).
Applying these precepts, we conclude that the relator has failed to show that there is either actual or presumed prejudice against him to a degree that will render a fair trial impossible. As there has not yet been a voir dire examination, it is impossible to decide at this point whether actual prejudice against the accused exists on the part of prospective jurors. Relator's argument that the extensive coverage by the media will deny him a fair trial rests entirely upon the quantum of publicity which the events received. He has failed to present us with any evidence from which we can reasonably presume that Bossier Parish jurors will be prejudiced by the publicity which largely concerns the Caddo Parish crimes. We cannot say based on this record that the publicity is of such a character that a Bossier Parish juror exposed to it will be presumed prejudiced regardless of whether he says he can remain impartial. Under Murphy, extensive knowledge in the community of either the crimes or the putative criminal and his prior crimes is not in itself sufficient to render a trial constitutionally unfair. Unfairness of a constitutional magnitude cannot be presumed in the *1081 absence of a "trial atmosphere ... utterly corrupted by press coverage." Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); Murphy v. Florida, supra. The present record in this case does not justify a presumption that the trial atmosphere in Bossier Parish has been so affected.
Nevertheless, because serious questions of possible prejudice have been raised in this case, the trial judge's order refusing to change the venue shall be vacated, and the trial judge is instructed to defer ruling thereon until completion of voir dire in this case, which shall be governed by the following guidelines based upon the standard proposed by the American Bar Association's Standards Relating to Fair Trial and Free Press § 8-3.5 (1978).
Since there is a significant possibility that individual jurors will be ineligible to serve because of exposure to potentially prejudicial material, the examination of each juror with respect to exposure shall take place outside the presence of other chosen and prospective jurors. An accurate record of this examination shall be kept by court reporter or tape recording whenever possible. The questioning shall be conducted for the purpose of determining what the prospective juror has read and heard about the case and how any exposure has affected that person's attitude toward the trial, not to convince the prospective juror that an inability to cast aside any preconceptions would be a dereliction of duty.
Both the degree of exposure and the prospective juror's testimony as to state of mind are relevant to the determination of acceptability. A prospective juror testifying to an inability to overcome preconceptions shall be subject to challenge for cause no matter how slight the exposure. If the prospective juror remembers information that will be developed in the course of the trial, or that may be inadmissible but does not create a substantial risk of impairing judgment, that person's acceptability shall turn on the credibility of testimony as to impartiality. If the formation of an opinion is admitted, the prospective juror shall be subject to challenge for cause unless the examination shows unequivocally the capacity to be impartial. A prospective juror who has been exposed to and remembers reports of highly significant information, such as the existence or contents of a confession, or other incriminating matters that may be inadmissible in evidence, or substantial amounts of inflammatory material, shall be subject to challenge for cause without regard to the prospective juror's testimony as to state of mind.
The trial court's ruling on the motion to change venue is vacated, and the case is remanded for further proceedings. In the interest of justice, however, the trial court is directed to defer ruling on the motion until completion of voir dire and to apply the foregoing guidelines in conducting the voir dire.
RULING VACATED; REMANDED WITH INSTRUCTIONS.
MARCUS, J., concurs.
BLANCHE, J., concurring in part and dissenting in part for reasons assigned.
WATSON, J., dissents being of the opinion that change of venue should be granted.
BLANCHE, Justice (concurring in part; dissenting in part).
I concur in this opinion's holding that defendant has failed to show that there is actual or presumed prejudice against him so as to render a fair trial in his case impossible.
Although this Court's advice to the trial judge as to how the voir dire examination should be conducted seems fair it is, nevertheless, based on American Bar Association standards and may or may not have been the product of the adversary concept of judicial proceedings.
Furthermore, this writer feels that some trial judges may elect to play it safe and excuse anyone who ever heard about the "Highland rapist" and his identification as the accused in order to avoid a mistrial.
*1082 Therefore, I dissent from this portion of the opinion insofar as it remands the case for further proceedings in accordance with the majority's instructions.