442 So.2d 1129 (1983)
STATE of Louisiana
v.
Colin CLARK.
No. 83-KK-1607.
Supreme Court of Louisiana.
November 28, 1983.
*1130 Lewis O. Unglesby, Baton Rouge, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph Roy, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-respondent.
CALOGERO, Justice.
We granted defendant's writ application to examine the serious contention that he is entitled to a change of venue for his retrial on the charge of first degree murder, a charge for which he was once convicted and sentenced to death in Baton Rouge, Louisiana. Upon review, we conclude that the venue should be changed, and therefore remand the case to the district court for appropriate action in that regard.
Colin Clark's retrial on the charge of first degree murder which resulted from the 1978 killing of a Baton Rouge restaurant manager came about as a result of the following events.
The grand jury of East Baton Rouge Parish indicted defendant Colin Clark for first degree murder, in violation of La.R.S. 14:30. Following trial, the twelve member jury returned a unanimous verdict of guilty *1131 as charged and then recommended the death penalty. This Court affirmed defendant's conviction and sentence. State v. Clark, 387 So.2d 1124 (La.1980), cert. denied 449 U.S. 1103, 101 S.Ct. 900, 66 L.Ed.2d 830; rehearing denied 450 U.S. 989, 101 S.Ct. 1530, 67 L.Ed.2d 825 (1981). This Court also denied Clark post-conviction relief. Clark then filed a post-conviction application with the federal courts. Throughout these legal processes, however, Clark remained steadfast in expressing a preference for execution rather than life imprisonment, which posture afforded him massive media coverage. At one point when he was still scheduled for execution, Clark held a press conference during which he admitted his part in the armed robbery which had resulted in the restaurant manager's death; he apologized to the victim's family.
Shortly thereafter, however, a stay of execution was granted by the United States Fifth Circuit Court of Appeals to review Clark's conviction and sentence. That Court ultimately reversed his conviction and ordered a new trial. Clark v. Louisiana State Penitentiary, 694 F.2d 75 (1982).[1] Clark then filed a motion for a change of venue in the East Baton Rouge District Court. After a delay of three months, the trial judge denied the motion.[2] The First Circuit Court of Appeal denied defendant's application for review.[3] Defendant argued to this Court that the trial court erred in not granting a change of venue. We granted his application to consider that question. 435 So.2d 469 (La. 1983).
Clark's motion in the trial court for a change of venue after the U.S. Fifth Circuit reversed defendant's conviction referred to several specific items of media coverage and alleged that these, along with the remaining extensive coverage, would make it impossible for defendant to receive a fair trial in East Baton Rouge Parish. The trial judge conducted a hearing on the *1132 motion, at which hearing a "dry run" voir dire took place and Dr. Zimmerman, a psychologist qualified as an expert in public opinion polls, testified concerning the publicity's impact on the community. At the hearing defendant introduced into evidence several television scripts, numerous newspaper articles and four video-tapes: two marked WBRZ-TV; one marked WDSU, special, 8-18-82; and one marked Colin Clark Press Conference.
In denying the change of venue, the trial judge reviewed the recent jurisprudence of this Court in the area and concluded that, given the nature of the publicity and the degree of its circulation in the community, and given the fact that the publicity was promoted by the defendant himself (with particular reference to the news conference) the jurors could set aside what they had heard about the case and be unaffected by any prejudice or pressure from outside influences.
The grounds for a change of venue are set forth in La.C.Cr.P. art. 622 which provides:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
In deciding whether to grant defendant's motion for a change of venue, therefore, the trial judge must consider if prejudice, undue influence, or any other reason will deny the defendant a fair trial in the parish in which the prosecution is pending. The judge must also decide if such prejudice or influence will affect either the answers of the jurors on the voir dire examination or the testimony of the witnesses at trial. La.C.Cr.P. art. 622; State v. Goodson, 412 So.2d 1077 (La.1982); State v. Rodrigue, 409 So.2d 566 (La.1982); State v. Felde, 382 So.2d 1384 (La.1980); State v. Bell, 315 So.2d 307 (La.1975). The burden of proof is on the defendant to show that such prejudice exists in the collective mind of the community that a fair trial is impossible. State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Adams, 394 So.2d 1204 (La.1981); State v. Williams, 385 So.2d 214 (La.1980), cert. denied 449 U.S. 1017, 101 S.Ct. 580, 66 L.Ed.2d 478 (1980); Felde, supra. Upon review, we find that the defendant has sustained his burden in that regard in this case, and we disagree with the trial judge that Clark's calling his press conference and causing attending publicity should preclude his being granted a change of venue.
The newspaper clippings, television scripts and video-tapes extensively document the widespread publicity surrounding Colin Clark from the time of the armed robbery and murder to the present. Additionally the testimony of news professionals at the hearing on the motion for change of venue support Clark's contention.
John Spain, News Director of Channel 2, WBRZ Baton Rouge, testified that his station had 60% of the audience for the 6 and 10 p.m. news, 70% at 5 p.m. and approximately 90% for the morning news. Station viewing area to the south is to Morgan City and the Gulf; to the west as far as Crowley; to Bougalusa on the east and to McComb on the north. The station also goes, via cable, into Oakdale and Alexandria. Mr. Spain played two of the video tapes included as exhibits. One of these aired as a two-part series on consecutive nights (Nov. 3 and 4 of 1982). He said that all the stories were "top blockers" which he explained meant that they played in the top five minutes of the program. He characterized the news coverage of Colin Clark as "significant" and said that the number of cases falling into the same category you "could probably count on one hand." When asked whether he anticipated that the coverage would continue, he replied *1133 that the story was being covered the day of the hearing.
Chris McDaniel, Assistant News Director of WAFB, Channel 9 Baton Rouge, agreed with Spain that the coverage of Colin Clark has been substantial, and he, too, anticipated that it would continue. McDaniel played a video tape from February 14, 1983, containing a statement by Ossie Brown and showing his picture. McDaniel estimated that his station was received in 105,000 homes for the 6 p.m. news and a few thousand less at 10 p.m. His station's coverage area included Point Coupee, St. Helena, St. Mary, West Baton Rouge, Iberville and Assumption Parishes, as well as East Baton Rouge Parish. The station goes into Alexandria and Lafayette on cable. Although he had no record of it, he was sure that stories of Colin Clark were provided to other stations in the state, such as those in Shreveport. His station last ran a story on Clark on April 1, 1983, and was covering the hearing on the change of venue.
Bob Nesse, Assignments Editor of WRBT, Channel 33 Baton Rouge, played a tape of the press conference with Clark when his execution was scheduledOctober, 1981. The tape also had 23 stories dealing with the death penalty, but his file did not go back to the time of the trial or include the crime. To his knowledge the last coverage on his station occurred on February 17, 1983, "talking about Mr. District Attorney, Ossie Brown, seeking the death penalty when Colin Clark gets a new trial." He stated his opinion that the fact that Clark's execution "was going to be the first execution in twenty years ... made it a very significant news story." Discussing Clark's press conference, he said that Channels 2 and 9 from Baton Rouge were present as well as public television, three New Orleans channels, N.B.C. (and he thought C.B.S.). In fact, N.B.C. coordinated it with his channel and played it on national news in addition to furnishing the tape to its local affiliates. All three wire services were also represented at the conference. Although his station has only a 50 mile signal radius, Neese said that it goes on cable to Bogalusa, Lafayette, Morgan City and into Mississippi.
Yvonne Foreman, the reporter for the Baton Rouge Morning Advocate assigned to cover the Nineteenth Judicial District Court, stated that in her seven years with the paper she could not recall the paper providing so much coverage for a criminal trial as it did for Colin Clark. She termed the case a very significant one. The prosecutor stipulated that the State-Times and Morning Advocate, the two major papers in Baton Rouge, reach over 200,000 homes.
On the "dry run" voir dire which the trial judge conducted thereafter, thirty eight potential jurors were questioned. Two were questioned individually. Then three consecutive groups of twelve were interviewed. Of the first fourteen, only one juror did not recall anything in particular about the Colin Clark case. That juror was excusable on Witherspoon grounds, because of his opposition to the death penalty. Of the remaining thirteen, six recalled all of the details of the case to that point: the murder, trial, conviction, death sentence, twenty-four hour reprieve and reversal. Of the remaining jurors, each recalled scattered events in the prior history of the case.
All of the next group of twelve were familiar with some, if not all, of the events leading up to Clark's retrial for second degree murder. Only three of this group unequivocally indicated that, in their opinion, their knowledge to date of the Colin Clark case would not affect their decision as a juror in his federally ordered retrial. In like manner, all of the last group of twelve had heard of the Colin Clark murder case. Of this group, it was again only three who were convinced that they would be able to separate their judgment in this case from their knowledge of what had preceded it.
In State v. Goodson, 412 So.2d 1077 at 1081 (La.1982) we said:
A prospective juror who has been exposed to and remembers reports of highly significant information, such as the *1134 existence or contents of a confession, or other incriminating matters that may be inadmissible in evidence, or substantial amounts of inflammatory material, shall be subject to challenge for cause without regard to the prospective juror's testimony as to state of mind.
We find in this case that the majority of those jurors questioned on the mock voir dire were exposed to and remembered "highly significant information ... inadmissible in evidence, or substantial amounts of inflammatory material" which would make them "subject to a challenge for cause without regard to the prospective juror's testimony as to state of mind." 412 So.2d 1081.
Additionally we find that a change of venue is warranted in this case even apart from the Goodson standards relative to juror's challenges for cause.
Comment (b) of La.C.Cr.P. art. 622 states in pertinent part:
A change of venue ought to be available even though individually, each juror is not susceptible to a valid challenge for cause, if the defendant can show that ... he still cannot get a fair trial. The change of venue concept should operate where the state of the public mind against the defendant is such that jurors will not completely answer honestly upon their voir dire, or witnesses will be so affected by the public atmosphere that they will not testify freely and frankly.
Likewise, this Court has stressed that there is a difference between answers which would sustain a challenge for cause and those which indicate the need for a change in venue. State v. Bennett, 341 So.2d 847 (La.1976); State v. Rudolph, 332 So.2d 806 (La.1976) cert. denied, 429 U.S. 982, 97 S.Ct. 496, 50 L.Ed.2d 591 (1976); State v. Berry, 329 So.2d 728 (La.1976); State v. Bell, supra.
Thus, while qualified jurors need not be totally ignorant of the facts and issues involved,[4] so too the juror's assurances that he is equal to the task cannot be dispositive of the accused's rights. Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975) and cases cited thereafter in Note 4 supra.
If the defendant can demonstrate that actual prejudice, influence, or other reasons exist which will affect the answers of the jurors on the voir dire examination or the testimony of the witnesses at trial, the court must take this into consideration in deciding whether to grant a change of venue. La.C.Cr.P. art. 622, State v. Kahey, 436 So.2d 475 (La.1983); State v. Morris, 429 So.2d 111 (La.1983); Goodson, supra; Rodrigue, supra.
Moreover, although extensive knowledge in the community of either the crimes or the accused and his prior crimes is not in itself sufficient to render a trial constitutionally unfair, unfairness of a constitutional magnitude may be presumed so as to require a change of venue if the "trial atmosphere" has been "utterly corrupted by press coverage." Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); Murphy v. Florida, supra; Kahey, supra; Morris, supra; Goodson, supra.
Defendant's televised interview as the time for his scheduled execution neared, admittedly done at his initiation, seems to put this case in a posture similar to Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). The impact of Clark's interview, with defendant stating that he wished to die rather than *1135 serve a life sentence, coupled with the impact of the interviews with the parents of the victim would fall within the Supreme Court's classification as a spectacle. The Rideau Court held, "without pausing to examine a particularized transcript of the voir dire examination of the members of the jury, that due process of law in this case required a trial before a jury drawn from a community of people who had not seen and heard Rideau's televised `interview.' " 373 U.S. at 727, 83 S.Ct. at 1419, 1420. In the case at bar, it may not be possible to find a community which meets the Rideau criteria that the people have not seen and heard the television interviews, but the people in a community other than Baton Rouge are less likely to have been tainted by these interviews. In assessing the potential for prejudice to defendant on retrial in East Baton Rouge Parish, it is important to note here that the jury will determine sentence as well as the issue of guilt or innocence. The possibility of death penalty (again) in this case requires an exacting concern for reliability in the sentencing determination.
We now turn to the question of whether Clark played such a part in generating the publicity he received as to bar his being granted a change of venue in this his retrial for second degree murder.
Defendant can hardly be charged with stimulating publicity for the purpose of securing a venue change at a possible later retrial, an eventuality which at the time of his forthcoming execution was rather remote. The press conference was initiated at a time when Clark was preparing to die and when he was apparently embracing execution willingly. Since his stay of execution and reversal of the death penalty, Clark has not initiated media contact. The United States Supreme Court in recognizing the impact of television in Rideau noted that who initiated the televised interview was "a basically irrelevant detail." 373 U.S. at 726, 83 S.Ct. at 1419. Also, some of the news stories, although about defendant, were part of a series dealing with several men who had received the death sentence. While most of the articles appear to be factual reports about defendant and the crime of which he was convicted, the "human interest" nature of such articles given the defendant's on-again, off-again attitude toward his impending execution and appeals taken on his behalf make his case more likely to be remembered in the minds of potential jurors.
Finally, this case is distinguishable from Morris, supra. In Morris at 429 So.2d 118, this Court said: "The record before us demonstrates convincingly that by the time of the final voir dire, public and media attention were no longer focused on the case." In the case at bar, the media attention has continued to focus upon defendant, and there seems to be little reasonable expectation that it will not continue to do so.

Decree
For the foregoing reasons, we conclude that the defendant's motion for a change of venue should have been granted by the trial judge in this matter. We therefore reverse the lower court in that regard and remand the case to the district court for further proceedings.
REVERSED AND REMANDED.
DIXON, Chief Justice, dissenting.
Although there is widespread knowledge of this case and this defendant, there has been no "circus atmosphere", no evidence of public clamor nor hatred, no evidence of any kind of pressure that might corrupt a voir dire, no distortion of facts or abuse by the news media. It has not been proved that defendant is not likely to get a fair trial in East Baton Rouge Parish.
NOTES
[1] The Fifth Circuit reversed defendant's conviction on the grounds that the trial court's general charge to the jury, when read as a whole, conveyed the impression "... that they could find evidence of [defendant's specific intent to kill, an essential element of the offense] in acts of butcheryby Glover [the co-defendant]if the two of them had combined to commit the crime of armed robbery;" and, that this jury instruction "to deem Glover's acts to be intended by Clark relieved the prosecution of its burden [to prove that Clark had the requisite specific intent to kill] in violation of Mullaney v. Wilbur, 421 U.S. 684 [95 S.Ct. 1881, 44 L.Ed.2d 508] (1975) and cast the burden of disproving that intent upon Clark in violation of Sandstrom v. Montana, 442 U.S. 510, [99 S.Ct. 2450, 61 L.Ed.2d 39]." 694 F.2d at 77.
[2] Initially after a contradictory hearing which included the conducting of a mock voir dire, the trial judge deferred ruling on the change of venue motion until after jury selection. The First Circuit Court of Appeal denied the defendant's writ application noting that "[i]t is within a trial judge's discretion to defer ruling on a change of venue motion until actual voir dire, a preferable practice. See e.g., State v. Goodson, 412 So.2d 1077 (La.1982); State v. Rodrigue, 409 So.2d 556 (La.1982)."

On application to this Court following the Court of Appeal's denial, we ordered the trial judge to rule on the change of venue motion. This case was distinguishable from both Good-son and Rodrigue wherein the trial judges had denied the change of venue and the appellate courts were reviewing the wisdom of that denial. Our order to the trial court in this case read in full as follows:
The trial judge is ordered to rule forthwith on defendant's change of venue motion. A motion for change of venue shall be filed before the first witness is sworn at the trial of the merits and decided after a contradictory hearing. La.C.Cr.P. art. 621. Upon reviewing a refusal to change venue, an appellate court may, when serious questions of possible prejudice have been raised, vacate the ruling and instruct the trial court to defer its ruling on the motion until completion of voir dire in the case. State v. Goodson, 412 So.2d 1077 (La.1982); State v. Rodrigue, 409 So.2d 556 (La.1982). However, the trial court upon completion of the contradictory hearing must decide whether to grant or deny a change of venue. La.C.Cr.P. arts. 621, 622. Of course, in denying a change of venue, nothing prevents the trial court from providing that the denial shall be without prejudice to renewal at the completion of the voir dire examination. State v. Clark, 434 So.2d 404 (La.1983).
[3] In so doing the First Circuit found "[n]o error shown in the ruling complained of; reserving however to defendant the right to reurge a change of venue motion at the completion of the voir dire examination only before the first witness is sworn."
[4] To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); State v. Kahey, 436 So.2d 475 (La.1983); State v. Harper, 430 So.2d 627 (La.1983); State v. Morris, 429 So.2d 111 (La.1983); State v. David, 425 So.2d 1241 (La.1983); State v. Goodson, 412 So.2d 1077 (La.1982).