FORET, Judge.
Defendant, Jackie Lambert, was convicted on May 27, 1986, by a twelve-person jury of second degree murder, a violation of La.R.S. 14:30.1. Defendant has appealed his conviction based on five assignments of error. However, assignment of error # 5 has not been briefed on appeal and therefore is considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982);
*1385 FACTS
Georgiana Angers Young, 79, was brutally murdered in her home at 625 South Washington Street, in Lafayette, Louisiana, on May 8, 1984. The murder occurred during the course of a burglary. Defendant and a co-defendant, Wilton Clovis Lin-don, were arrested in connection with this murder and burglary two months after it occurred.
Wilton Clovis Lindon, the co-defendant in this case, implicated defendant, Jackie Lambert.[1] At Lambert’s trial, Lindon testified that on May 7, 1984, he and the defendant and a few others were at his brother’s home until approximately 11:30 P.M., at which time defendant and Lindon (according to Lindon) left to go burglarize a house. On the way, they saw a boat in the carport of the victim’s house and decided to burglarize it instead. Lindon stated that defendant jumped on top of the water heater at the rear of the house, took out a knife, and cut holes in the screen. Lindon claims that defendant entered the home through the window and let him in through the back door. Lindon admits to having stabbed the victim three times with a screwdriver after she was lying motionless, in a pool of blood. However, he denies initially attacking the victim at any time.
Defendant, Lambert, denies having anything to do with the burglary and murder. He has attempted to show that Lindon committed the murder alone. Some of the investigating officers testified that defendant made a statement during the course of interrogation, indicating that he was present at the rear of the home during the commission of the crimes. However, defendant took the stand at trial and testified on his own behalf, denying the alleged statement and any involvement whatsoever in the crime.
The record contains inconsistent evidence regarding the time the alleged statement was made. Some of the officers stated that the statement was made after the defendant was taken to the victim’s home and others stated it occurred prior to a visit to the victim’s home.
After a unanimous jury verdict finding the defendant guilty of second degree murder, this appeal ensued.
ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial court erred in denying his motion to suppress an incul-patory statement made by him in the presence of two police officers. He claims that the State failed to prove beyond a reasonable doubt that he voluntarily gave the statement because the testimony of the police officers differed in factual and time sequences.
At the motion to suppress hearing, four police officers testified as to the questioning of defendant on January 22,1984. Two of the officers, Ronald Senegal and Gerald Boutte, testified that defendant admitted to being present at the rear of the victim’s house on the night of the murder but denied entering the residence. The statement was made in their presence after twenty minutes of interrogation. Detective Senegal testified that he was alone with the defendant when defendant first made the inculpatory statement. Senegal then asked Officer Boutte to hear defendant’s statement, and Officer Boutte testified that defendant repeated the same statement. However, Boutte claims that defendant then refused to give the statement in writing or on tape. Officer Jim Craft was in charge of the investigation in this case. He testified that he initially advised defendant of his Miranda rights when defendant was first interviewed that day. Defendant signed a waiver of rights form. However, the date of June 21, 1984, rather than the correct date of June 22, 1984, was mistakenly written on the form. Officer Craft stated that there was substantial commotion at that time and that he was coordinating simultaneous questioning of a suspect *1386 ed co-defendant while defendant was being questioned.
The record reflects that the investigating officers differed in their chronology of events. Officers Dartez, Craft, and Senegal testified that defendant had made his inculpatory statement prior to being taken to the victim’s home. Later, Senegal inconsistently stated that defendant had initially gone to the victim’s residence and then returned to the police station, at which time he made the inculpatory statement. Officer Boutte gave this same factual sequence. Officer Craft testified that defendant signed a written waiver of rights form when, he first interrogated him and that when Officer Senegal took over questioning the defendant, Craft told Senegal this. Senegal testified that he orally advised defendant of his constitutional rights upon questioning him but that he did not get a written waiver from defendant. All officers testified that defendant had not been threatened, coerced, or promised anything in return for his statement. Additionally, the officers testified that defendant never requested an attorney.
Defendant testified at the motion to suppress hearing. He stated that he was initially brought to the victim’s residence and, while there, was threatened by the police and told he would be chained to an exposed pipe and left overnight to allow the victim to haunt him. Defendant stated that the police forced him to lie down on the area where the victim’s body was found and that prior to taking him to the home, one officer told him that if he tried to run he would be shot in the back. Additionally, defendant claims the officers used profane language about his mother.
Officer Craft was asked why the defendant was taken to the victim’s home. He testified that defendant was taken to the victim’s house in order to ascertain if they were discussing the same residence due to the number of cases under investigation at the time.
Defendant contends that the State failed to prove the voluntariness of the statement because of the inconsistencies in the officers’ testimony and, thus, the statement should have been suppressed. La.R.S. 15:451 provides that before a confession may be introduced into evidence it must affirmatively show that it was free and voluntary and not made under the influence of fear, duress, intimidation, menanc-es, threats, inducements or promises.
The admissibility of an inculpatory statement is a question of fact for the trial judge, and his ruling as to credibility of witnesses on a particular issue are not to be overturned unless unsupported by the evidence. State v. Mitchell, 437 So.2d 264 (La.1983). The trial court’s determination that a statement is free and voluntary is entitled to great weight and will not be disturbed unless it is not supported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983).
The State has the burden of affirmatively proving, beyond a reasonable doubt, that a confession was given freely and voluntarily; furthermore, if the statement was elicited during custodial interrogation, the State must show that defendant was apprised of his constitutional rights. State v. Narcisse, 426 So.2d 118 (La.1983), cert, den., 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983). When a defendant specifically alleges instances of police misconduct in reference to an inculpatory statement made while in police custody, it is incumbent upon the State to rebut specifically each instance of alleged police misconduct. State v. Petterway, 403 So.2d 1157 (La.1981).
According to the jurisprudence discussed- above, the trial judge’s ruling does not require reversal. The State specifically rebutted defendant’s allegations of police misconduct through the sworn testimony of all of the police officers. The State showed thát defendant signed a waiver of rights form, and several officers testified that defendant was repeatedly informed of his constitutional rights. Despite the inconsistencies in the testimony by the police officers, the trial judge found their factual versions to be more credible than the defendant’s version. The record supports the trial court’s ruling, especially in light of the *1387 fact that all witnesses, including defendant, admitted that there was substantial activity occurring on that day. Hence, the inconsistencies in the testimony can easily be attributed to the confusion of that day. The inconsistencies in the sequences of events are non-determinative of the free and voluntary character of the confession. It appears that the State carried its burden of proof, and the trial court’s ruling is supported by the record. This determination is entitled to great weight on appeal. Therefore, this assignment has no merit.
ASSIGNMENT OF ERROR NO. 2.
Defendant contends the trial court erred when it denied his request for individual voir dire of the prospective jurors. Defendant claims that the pre-trial publicity of this case constituted special circumstances which required individual voir dire to insure against a non-prejudiced jury.
Prior to trial, defendant requested individual voir dire, and in the alternative, the selection of two separate juries, one to determine guilt or innocence and the other to determine the sentence. Defendant based his request for individual voir dire on the alleged propensity of jurors and a panel to be influenced by other jurors and, thus, be swayed to inflict the death penalty. The trial judge denied defendant’s request, and the jurors were selected in panels of six members each. The trial judge allowed the jurors to be examined as a group on all subjects. The judge then allowed defense counsel to examine individually certain prospective jurors who had earlier indicated that they had previous knowledge of the case.
La.C.Cr.P. art. 786 provides:
“Examination of jurors
The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court. A prospective juror, before being examined, shall be sworn to answer truthfully questions asked him relative to his qualifications to serve as a juror in the case.” (emphasis ours)
The purpose of voir dire is to discover the basis for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. The scope thereof is within the sound discretion of the trial judge. State v. Perry, 420 So.2d 139 (La.1982), cert. den., 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983). The right to full voir dire examination is based on the constitution and therefore wide latitude should be given to a defendant to test prospective jurors’ competency and impartiality. State v. James, 431 So.2d 399 (La.1983), cert. den., 464 U.S. 908, 104 S.Ct. 263, 78 L.Ed.2d 247 (1983). No provision of law either prohibits or requires sequestration of prospective jurors so as to facilitate conducting individual voir dire, and a capital case does not create per se an exceptional circumstance, without need for further showing, to prove the need for individual voir dire. State v. Copeland, 419 So.2d 899 (La.1982).
The trial court has the discretion to permit individual voir dire if a defendant can show that special circumstances exist. State v. Jordan, 420 So.2d 420 (La.1982). Unless there is a significant possibility that individual jurors will be ineligible to serve because of exposure to potentially prejudicial material, there is no requirement that examination of each juror be conducted individually. State v. Goodson, 412 So.2d 1077 (La.1982); State v. Monk, 454 So.2d 421 (La.App. 3 Cir.1984), writ denied, 459 So.2d 537 (La.1984).
Defendant alleges the pre-trial publicity in this case was extensive, but presented no evidence on appeal to show the extent of such publicity. Nonetheless, defendant argues that the pre-trial publicity is a “special circumstance” that in this case warranted sequestered and individualized voir dire, and he cites State v. Goodson, supra; State v. Monk, supra; and U.S. v. Davis, 583 F.2d 190 (5th U.S. Cir.Ct. of App.1978) in support of this. In Goodson, the defendant was denied a change of venue. The Supreme Court remanded the case for a sequestered and individualized voir dire of the prospective jurors to determine whether the community at large was so *1388 prejudiced by pre-trial publicity as to require a change of venue. In the case at bar, the issue presented is whether individualized and sequestered voir dire is required when there has been some pre-trial publicity. In Goodson, the court had to determine whether the defendant had been properly denied a change of venue when there had been overwhelming pre-trial publicity. Although the court, in remanding the case to determine the community’s potential prejudice, ordered individualized sequestered voir dire as the best method to ascertain this information, the court did not hold that any amount of pre-trial publicity required individualized sequestered voir dire. Thus, although Goodson’s result is indicative that pre-trial publicity, in certain instances, can be a “special circumstance” requiring individualized voir dire, it is not dispositive in this case.
In U.S. v. Davis, supra, the community had been exposed to extensive pre-trial publicity, and the trial judge only allowed conclusory questioning in panels of jurors. The court concluded that the extensive publicity raised a significant possibility of prejudice and, as such, held that individual voir dire was necessary. However, the court stated in reference to pre-trial publicity: “Though separate examination of jurors is sometimes preferable, it is not necessarily required.” Davis, supra, at 196, 197. Because the pre-trial publicity in the case at bar was presumably of a lesser magnitude and since defendant was allowed individualized cross-examination of those jurors who indicated pre-trial knowledge of the case, Davis is not controlling in the case at bar.
In State v. Monk, supra, and in State v. David, 425 So.2d 1241 (La.1983), cert, den., — U.S. -, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986), the courts held that unless there is a significant possibility that individual jurors will be ineligible to serve because of exposure to potentially prejudicial material, there is no requirement that the examination of each juror be conducted individually. In both cases, the trial court’s refusal to allow individual voir dire was not an abuse of the court’s discretion since the possibility of exposure to prejudicial material was remote.
In the case at hand, there has been no showing by the defendant, either pre-trial or on appeal, that there was a significant possibility of exposure of prejudicial material to the community. Defendant was allowed individualized voir dire of those few jurors who indicated pre-trial knowledge of the case. Defendant’s right to an impartial jury does not appear to have been denied. This assignment has no merit.
ASSIGNMENT OF ERROR NO. 3
The 15th Judicial District Court used a jury selection system that was not legislatively authorized nor adopted in the court’s local rules. Defendant claims the Fifteenth Judicial District Court used a jury pool system which the defendant alleges is legislatively authorized for some parishes but not for others. Defendant claims the Fifteenth Judicial District Court is not authorized to use the jury pool system. Thus, defendant contends he was denied procedural due process and that his conviction requires reversal.
La.C.Cr.P. art. 784 provides that:
“In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court.
In those judicial district courts, including the Criminal District Court for the parish of Orleans, wherein use of a jury pool has been authorized by law, the petit jury panel shall be selected by random, indiscriminate choice in a manner to be determined by the rules of the court in which the jury panel is selected.”
La.C.Cr.P. art. 409.3 provides that:
“A. A district court may, by local rules adopted by majority vote of the judges, create and provide for the manner of administering a central jury pool for criminal and civil cases. The combined Orleans criminal and civil district courts shall be considered a district court for purposes of this Article.
B. Jurors selected to serve in the central jury pool may serve as jurors in either civil or criminal matters, or both.
*1389 C. The central jury pool shall be selected at random from persons included within the general venire. The number of persons selected to comprise the central jury pool and their length of service shall be determined pursuant to local court rules.
D. A panel of the central jury pool shall be selected at random from persons in the central jury pool. The number of persons selected to comprise the panel shall be determined pursuant to local court rules but the number shall be no less than three times the number of persons needed to complete the jury and in no event less than ten.
E. The petit jury shall be selected from the one or more central jury pool panels assigned to the court. Persons shall be called from the central jury pool panel at random.
F. Persons selected to serve on a central jury pool panel and not selected to serve on a jury may, pursuant to local court rules, be returned to the central jury pool.
G. The provisions of this Article supplement the methods presently provided by law for selecting jurors." (emphasis ours.)
Thus, though the district court has authority to use the jury pool system under Art. 409.3, it must adopt the use through a local rule. The Fifteenth Judicial District Court has not provided any local rules adopting a jury pool system. A review of the court minutes shows that the jury was selected through a jury pool system.
In determining whether such State action has violated the defendant’s right to procedural due process, we must address two questions: first, whether the State action has deprived the individual of a protected interest, i.e., life, liberty, or property. If such a deprivation is found, we must then determine whether the state procedures available for challenging the deprivation satisfy the requirements of due process. See Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Augustine v. Doe, 740 F.2d 322 (U.S. 5th Cir.Ct. of App.1984). In this instance, defendant has failed to allege or show any prejudice or “deprivation” resulting from the unauthorized use of the jury pool system. Defendant has not attacked the system on racial or other grounds and there is nothing in the record to indicate that the system used resulted in any unfairness to defendant. Therefore, this assignment has no merit.
ASSIGNMENT OF ERROR NO. 4
Defendant contends trial court error when he was denied access to certain police reports and confessions of prior crimes committed by co-defendant, Wilton Clovis Lindon. The trial court did deny defendant access to written reports, confessions, or scientific tests. However, the court allowed defendant to have the names of the investigating officers in order to ascertain the criminal history of co-defendant Lin-don. Defendant intended to base a large portion of his defense on rebutting co-defendant Lindon’s testimony that defendant had assisted in entering the victim’s house while co-defendant Lindon committed the actual killing. Through prior police reports and confessions, defendant desired to show that co-defendant Lindoii had previously committed prior burglaries and murders alone, thus establishing a system inferring co-defendant Lindon acted alone in this crime. Defendant contends that police records and reports establish these facts and, by denying him access, defendant was restricted to a fishing expedition by questioning police without any basis for knowing whether there was any written material, observations, or scientific tests which would lend additional credibility to his case.
Defendant based his request on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which requires the state to provide all exculpatory evidence to a defendant. The trial court did not examine the written materials in question. Instead, he ruled that evidence of co-defendant Lindon’s prior crimes was relevant to show knowledge, system, and intent, but these facts were not “exculpatory material” requiring disclosure of the written reports. Defendant was given the names of *1390 those officials who investigated co-defendant’s prior crimes. Subpoenas were issued by the court. Defendant objected to this ruling and, on appeal, urges that the evidence was exculpatory and the denial of such evidence caused great prejudice, thus requiring reversal.
Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of good or bad faith of the prosecution. Brady v. Maryland, supra; State v. Perkins, 423 So.2d 1103 (La.1982). The prosecution does not violate its constitutional duty to disclose unless the omission is of sufficient significance to result in denial of defendant’s right to a fair trial. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). When a defendant has made a request for specific exculpatory evidence, the standard of materiality or review is whether the undisclosed evidence might have affected the jury’s verdict. State v. Johnson, 464 So.2d 1363 (La.1985).
Thus, under the materiality test, elucidated in Johnson, supra, another person’s mo-dus operandi as stated in written police reports might have affected the jury’s verdict. In this case, defendant had made an exculpatory statement to two police officers stating that he had not participated in the crime but was present at the rear of the victim’s house at the time of the incident. Therefore, although evidence of the co-defendant’s prior criminal pattern showed the knowledge, system, or intent of the co-defendant, it was irrelevant to defendant’s guilt or innocence because this evidence would not establish that defendant had not participated in this crime as defendant had already admitted his involvement. Since the evidence in question was irrelevant to defendant’s guilt or innocence, the written reports of such facts were not exculpatory, and hence the trial court did not err in denying defendant’s request for access to them. Therefore, this assignment has no merit.
DECREE
For the foregoing reasons, the verdict of the jury and the rulings of the trial court are affirmed.
AFFIRMED.

. Co-defendant Lindon was convicted of two counts of burglary and first degree murder of Georgiana Angers Young. Furthermore, there is a pending charge of first degree murder and two burglaries of Mark Alan Casciani on May 3, 1984 (five days prior to the murder of Mrs. Young).