STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 KA 0921

STATE OF LOUISIANA

VERSUS

ERNESTO ALONSO-LLERENA

Judgment Rendered: **MAY 1 1 2020**

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Number 12-15-0311

Honorable Trudy M. White, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Hillar C. Moore, III<br>Ronald C. Gathe, Jr.<br>Jaclyn C. Chapman<br>Allison Miller Rutzen<br>Baton Rouge, LA | Counsel for Appellant<br>State of Louisiana |
| Dwight Doskey<br>Meghan Harwell<br>New Orleans, LA | Counsel for Defendant/Appellee,<br>Ernesto Alonso-Llerena |

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE: WHIPPLE, C.J., GUIDRY, AND BURRIS[1], JJ.

---

[1]Honorable William J. Burris (retired) is serving as judge *pro tempore* by special appointment of the Louisiana Supreme Court.

**WHIPPLE, C.J.**

The defendant, Ernesto Alonso-Llerena, and co-defendant, Frank Garcia, were charged by grand jury indictment with two counts of first degree murder, violations of LSA-R.S. 14:30. The defendant pled not guilty on both counts.[2] He adopted Garcia's motion to sever. The State stipulated that the cases should be severed, and the district court granted the motion.

The defendant also adopted Garcia's motion to change venue, arguing that inflammatory publicity had saturated the area from which the jury was to be drawn. Following a hearing, the motion was granted. The State now appeals,[3] contending in its sole assignment of error that the district court abused its discretion in granting the motion to change venue.[4] For the following reasons, we reverse the granting of the motion to change venue and remand for further proceedings.

## FACTS

This case is in a pretrial posture, and thus, no trial testimony has been presented concerning the facts of the offenses. The indictment charges that on or about October 18, 2015, in East Baton Rouge Parish, the defendant and Garcia, as principals, committed the first degree murders of Dennis and Suzanne Duplantier.

## MOTION TO CHANGE VENUE

In its sole assignment of error, the State contends the district court abused its discretion in granting the motion to change venue because the defendant's only evidence of potential bias consisted of twenty-five separate local media articles, published in duplicate over the course of three years, and a few additional articles that appeared in various national online publications. The State argues that this

---

[2]The minutes reflect the defendant was arraigned on two counts of first degree murder **and two counts of second degree kidnapping**. The transcript, however, reflects arraignment only on two counts of first degree murder. When there is a discrepancy between the minutes and the transcript, the transcript must prevail. State v. Lynch, 441 So. 2d 732, 734 (La. 1983).

[3]See LSA-C.Cr.P. art. 912(B)(5).

[4]The State has separately appealed from the granting of the motion to change venue in Garcia's case. See State v. Garcia, 2019-0920 (La. App. 1st Cir. __/__/__), ____ So. 3d ___.

2

court should vacate the district court's ruling, and "[s]hould circumstances at voir dire persuade defendant to re-urge the motion to change venue, the [district] court will be able to render an appropriate, fully-reviewable ruling at that point."

The right to an impartial jury and a fair trial is guaranteed to every defendant. See U.S. Const. amend. VI; La. Const. art. I, § 16; see also LSA-C.Cr.P. art. 797(2). To effect this guarantee, the law provides for a change of venue when a defendant establishes that he or she will be unable to obtain an impartial jury or a fair trial at the place of original venue. State v. Magee, 2011-0574 (La. 9/28/12), 103 So. 3d 285, 298, cert. denied, 571 U.S. 830, 134 S. Ct. 56, 187 L. Ed. 2d 49 (2013).

Louisiana Code of Criminal Procedure article 622 provides:

A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.

In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.

The second paragraph of Article 622 "overcomes the challenge for cause concept" and is to be "superimposed upon the entire proceeding." See State v. Bell, 315 So. 2d 307, 310 (La. 1975). In Bell, the court explained:

A change of venue ought to be available even though, individually, each juror is not susceptible to a valid challenge for cause, if the defendant can show that overriding all of these things and superimposed upon all of them he still cannot get a fair trial. The change of venue concept should operate where the state of the public mind against the defendant is such that jurors will not completely answer honestly upon their voir dire, or witnesses will be so affected by the public atmosphere that they will not testify freely and frankly.

Bell, 315 So. 2d at 310.

In exceptional circumstances, prejudice against a defendant may be presumed. See State v. David, 425 So. 2d 1241, 1246 (La. 1983) ("[U]nfairness of a constitutional magnitude will be presumed in the presence of a trial atmosphere

3

which is utterly corrupted by press coverage or which is entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of the mob."). Otherwise, it is the defendant's burden to demonstrate actual prejudice. Magee, 103 So. 3d at 298.

To meet this burden, a defendant must prove more than mere public general knowledge or familiarity with the facts of the case: he must demonstrate the extent of prejudice in the minds of the community as a result of such knowledge or exposure to the case. A defendant is not entitled to a jury entirely ignorant of his case and cannot prevail on a motion for change of venue simply by showing a general level of public awareness about the crime; rather, he must show that there exists such prejudice in the collective mind of the community that a fair trial is impossible. Whether a defendant has made the requisite showing of actual prejudice is a question addressed to the district court's sound discretion which will not be disturbed on appeal absent an affirmative showing of error and abuse of discretion. Magee, 103 So. 3d at 298; see also State v. Gordon, 2004-0633 (La. App. 1st Cir. 10/29/04), 896 So. 2d 1053, 1064, writ denied, 2004-3144 (La. 4/1/05), 897 So. 2d 600.

Factors relevant to the district court's determination of whether to order a change of venue include: (1) the nature of pretrial publicity and the degree to which it has circulated in the community; (2) the connection of government officials with the release of the publicity; (3) the length of time between the dissemination of the publicity and the trial; (4) the severity and notoriety of the offense; (5) the area from which the jury is to be drawn; (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant; and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire. Bell, 315 So. 2d at 311.

4

In deciding whether to change venue, the district court must extend its focus beyond the prejudices and attitudes of individual venire persons. The defendant must be allowed to show that, even if it would be possible to select a jury whose members were not subject to a challenge for cause, prejudice or influences exist within the community at large that would affect the jurors' answers during voir dire or the witnesses' testimony, or that for any other reason, a fair and impartial trial could not be obtained in that venue. The district court's ultimate determination must rest on the community's attitude toward the defendant. Magee, 103 So. 3d at 299.

At the hearing on the motion to change venue, the State argued it was premature to address the motion prior to voir dire because there was no way to determine whether or not the defendant would be able to obtain an impartial jury or a fair trial at the original place of venue without bringing in prospective jurors to determine their mindset. The State set forth the issue was not only whether prospective jurors had heard about the case, but also whether they had formed an opinion as to the defendant's innocence or guilt.

Counsel for Garcia[5] argued the court could look at the pretrial publicity "that has permeated the public in this case and determine just from that whether or not the pretrial publicity is such that it would prejudice the jurors — the potential jurors." Thereafter, the State and the defense stipulated to the introduction of Defense Exhibit #1 - news articles in globo. The exhibit consisted of forty-three news articles from The Advocate,[6] dated between November 18, 2015 and February 6, 2019, discussing the offenses at issue, indicating the defendant and

---

[5]Although the district court severed the proceedings, the defendant notes in his appellate brief that "all motions were . . . heard together for the sake of judicial economy." Additionally, with respect to the arguments presented by counsel for Garcia, counsel for the instant defendant stated, "I think that [counsel for Garcia] has mentioned every single thing that I would say," essentially adopting Garcia's arguments on the motion.

[6]Many of the articles were the same story in online and print versions.

Garcia had been charged with committing those offenses, or discussing rulings pertaining to trial of the defendant and Garcia.

Counsel for Garcia argued that the pretrial publicity had "pervaded this environment and this community in such a way that the court will not be able to be sure and be confident that we will be able to select a jury that would be fair, unbiased and impartial." Counsel for Garcia further argued that attempting to select a jury from a pool of citizens in East Baton Rouge Parish would fail because "there is a pervasive persistent opinion of guilt within [sic] regards to both of the accused in this matter. And even though there may be stronger feelings as to one or the other, the fact is those feelings will bleed over to the detriment of the other." Counsel for Garcia contended that after the court read the submitted articles, which were taken from the only widely circulated newspaper in East Baton Rouge Parish and which did not include television media publicity concerning the crimes, it would come away with the opinion that anyone exposed to the publicity will be affected by it and will have a very difficult time setting aside the publicity or any prejudice that they may have. Counsel for Garcia noted that the submitted articles reflected that the East Baton Rouge Parish District Attorney lived in the same area as the victims and had made comments "concerning the nature of the victims, the nature of this crime, . . . and therefore has contributed to some extent to the publicity in this case." Counsel for Garcia also argued that the submitted articles indicated that a police department spokesman had stated, "we think Garcia was obviously involved with kidnapping and murder of [the victims], but we don't want to speculate as far as his involvement."

The district court noted that the question of change of venue had been on the docket two or three times before finally being argued. The court stated it had researched the issue and had considered "the pros and cons." The court additionally considered the fact there were two cases being tried, and the possible

6

impact the Garcia trial, as the lead case, would have on the rights of the defendant. Therefore, finding "the integrity of the process" to be the most important consideration, the district court granted the motion.

Although we are mindful of the discretion afforded the district court in its determination of venue challenges, we find the district court erred and abused its discretion by granting the motion to change venue.

At the outset, we note that the defendant relied solely upon **news articles** to attempt to establish that the state of the public mind against him was such that jurors would not completely answer honestly upon their voir dire, or witnesses would be so affected by the public atmosphere that they would not testify freely and frankly.[7] He offered no polling information. Compare State v. Felde, 382 So. 2d 1384, 1387 (La. 1980) ("[t]estimony was presented by two experts in poll taking who indicated to the court that potential jurors would tend not to be truthful during voir dire."); State v. Montz, 2006-1068 (La. App. 4th Cir. 2/28/07), 954 So. 2d 190, 192, vacated and trial court ruling changing venue reinstated, 2007-0653 (La. 11/21/07), 968 So. 2d 727 (per curiam) (pollster testified that, based on two polls, "it was highly unlikely that the defendants would receive a fair trial in Orleans Parish."); State v. McKnight, 95-1486 (La. App. 1st Cir. 12/15/95), 665 So. 2d 768, 771, vacated and trial court ruling changing venue reinstated, 96-0176 (La. 4/19/96), 671 So. 2d 933 (professor and expert in the area of psychology and in the designing and conducting of surveys testified "comments made by the people surveyed in Livingston Parish showed hostility toward defendant.").

Moreover, on review, we find that the news articles relied upon by the defendant are factual, rather than invidious or inflammatory.[8] In an article from 2015, the defendant is described as "a Cuban national who has permanent legal

---

[7]See Bell, 315 So. 2d at 311 (factor (7) "any factors likely to affect the candor and veracity of the prospective jurors on voir dire").

[8]See Bell, 315 So. 2d at 311 (factor (1) "nature of pretrial publicity").

7

residency in the United States." The fact that "[n]either defendant speaks English" and that they were "Spanish-speaking" is referenced in certain articles, but only in the context of explaining the presence of, or request for funding for, interpreters. As to the circumstances of the alleged crimes, various articles set forth that the victims were "robbed, beaten, kidnapped, and strangled," and that their bodies were discovered in the back seat of their pickup truck in Hammond. However, no details, and particularly no pictures, concerning these facts are included. Rather than stating "we think Garcia was obviously involved with kidnapping and murder of [the victims], but we don't want to speculate as far as his involvement[,]" as claimed by Garcia's counsel, the various articles that are of record set forth the fact that the safe inside the home of the victims was found "open, with cash missing" and that "[a] large amount of cash and a number of unspecified items believed stolen from the home were discovered in Garcia's house in Hollywood, Florida." Moreover, the comment which the defendant cites herein, purportedly made by the police department's spokesman, does not appear to be in any of the articles of record and apparently was directed to a co-defendant (not the defendant at issue herein).

Factual articles have less potential for prejudice than invidious or inflammatory articles. See State v. Clark, 2002-1463 (La. 6/27/03), 851 So. 2d 1055, 1071, cert. denied, 540 U.S. 1190, 124 S. Ct. 1433, 158 L. Ed. 2d 98 (2004) ("[c]ourts must distinguish, however, largely factual publicity from that which is invidious or inflammatory, as they present real differences in the potential for prejudice.") We further note that the articles also spanned a period in excess of three years.[9] Forty-three copies of articles (many of which, as stated above, were merely the same story in online and print versions) concerning a double homicide

---

[9]See Bell, 315 So. 2d at 311 (factors (1) "the particular degree to which [the pretrial publicity] has circulated in the community" and (3) "the length of time between the dissemination of the publicity and the trial").

8

over such an extended period are less indicative of a hostile public atmosphere against the defendant to overwhelm prospective jurors and witnesses than would be a media blitz. See State v. Lee, 2005-2098 (La. 1/16/08), 976 So. 2d 109, 133 & 136, cert. denied, 555 U.S. 824, 129 S. Ct. 143, 172 L. Ed. 2d 39 (2008) ("defendant was not the subject of media coverage for a prolonged period of time," where approximately nineteen months passed between arrest and trial and over 5,000 pages of printed media and newscast transcripts were filed into evidence).

Additionally, as to the timing of its decision, we note that the district court ruled upon the challenge to venue prior to voir dire. While the court had no obligation to postpone ruling upon the motion until after voir dire,[10] by ruling prior to voir dire, the court eliminated a valuable source of information concerning whether prejudice against the defendant existed in the public mind. See Clark, 851 So. 2d at 1071 ("courts have examined the number of jurors excused for cause for having fixed an opinion as another gauge of whether prejudice exists in the public mind.... [I]n a community where the majority of prospective jurors will openly admit to a disqualifying prejudice, the reliability of other juror's assurances that they are impartial and have no preconceived notion may be drawn into question.").

Two articles in 2015 stated:

> Police believe Alonso, who was a landscaper for the Duplantiers and lived above a barn on their property, beat his employers until they allowed him access to the safe, according to a warrant. He then strangled the couple, who were discovered bound, and transported them with Garcia to the Hammond truck stop, police allege. The gas station's surveillance footage of two additional vehicles, along with cell tower evidence linked Alonso and Garcia to the crime. It's unclear the exact role Garcia played in the couple's death.

---

[10]In her concurring opinion in State v. Montz, Chief Justice Johnson noted, "[t]here seems to not be a bright line rule to give trial courts guidance as to when the motion for change of venue must be decided. The result is that the defendant who is required to wait for voir dire examination before winning a change of venue, is prejudiced when compared to the defendant who won the change of venue, pre-trial." State v. Montz, 2007-0653 (La. 11/21/07), 968 So. 2d 727, 728-29.

Later articles set forth that "[i]nvestigators have said they believe Garcia and Alonso went into the home and beat the couple to get the information needed to open the safe. Blood was found in several rooms, according to police." In a November 19, 2015 article (reported online November 20, 2015), East Baton Rouge Parish District Attorney Hillar Moore, III is quoted as saying, "[t]here were two people (in the Duplantiers' home), and we suspect it was these two." In a February 5, 2016 article, Moore is quoted as stating, "[b]ased on the evidence that I've heard, this is the proper indictment."

To the extent that the East Baton Rouge Parish District Attorney and the police contributed to the publicity concerning the case, there was no allegation of, much less any evidence of, a strategy by government officials to prejudice the public mind against the defendant with the release of publicity.[11] Compare Bell, 315 So. 2d at 308 & 311 (defendants, indicted for having incited and participated in a riot in which five people died and a television reporter was severely beaten, alleged that "the district attorney had prepared a bill of information charging the defendants with the attempted murder of Bob Johnson, the television newsman who remained comatose, which he would file shortly prior to the selection of the jury to further gain publicity and prejudice the public mind"). Thus, in the instant case, the prejudice, if any, to the defendant from the comments of government officials would diminish between the reporting of the comments and the start of the trial still to commence in this matter.

The murders involved in this case, like any other first-degree murders, were severe offenses that, understandably, generated notoriety.[12] Motions for change of venue, however, have been denied in other first-degree murder cases of similar or

---

[11]See Bell, 315 So. 2d at 311 (factor (2) "the connection of government officials with the release of the publicity").

[12]See Bell, 315 So. 2d at 311 (factor (4) "the severity and notoriety of the offense").

greater notoriety. See Lee, 976 So. 2d at 115-17, 123 n.8, 129 & 132 (recent graduate of the LSU MBA program stabbed 81 times, raped, and murdered by South Louisiana Serial Killer who, approximately one month before trial in East Baton Rouge Parish (EBRP) was convicted in West Baton Rouge Parish (WBRP) of the second-degree murder of another victim and news coverage of the WBRP trial had flooded EBRP); State v. Manning, 2003-1982 (La. 10/19/04), 885 So. 2d 1044, 1057-59, 1086 & 1103-04, cert. denied, 544 U.S. 967, 125 S. Ct. 1745, 161 L. Ed. 2d 612 (2005) (defendant engaged in the perpetration of an aggravated burglary, armed robbery, and second-degree kidnapping when he killed the sixty-two-year-old female victim by slashing her throat, fracturing her skull, and fracturing twelve of her ribs); State v. Hoffman, 98-3118 (La. 4/11/00), 768 So. 2d 542, 548-50, cert. denied, 531 U.S. 946, 121 S. Ct. 345, 148 L. Ed. 2d 277 (2000) (victim kidnapped, robbed, raped and murdered "execution style" by her parking garage valet).

At the time of the 2010 Census, East Baton Rouge Parish had a population of 440,171.[13] https://www.census.gov/quickfacts/eastbatonrougeparishlouisiana. The size of the jury pool to be summoned is unknown at this time, but given the large population of East Baton Rouge Parish, the likelihood of a dearth of qualified prospective jurors is minimal.

Accordingly, we find the assignment of error by the State has merit.

### CONCLUSION

For all of these reasons, the district court's ruling on the defendant's motion to change venue is hereby reversed and the matter is remanded for further proceedings.

**GRANTING OF MOTION TO CHANGE VENUE REVERSED; REMANDED FOR FURTHER PROCEEDINGS.**

---

[13]See Bell, 315 So.2d at 311 (factor (5) "the area from which the jury is to be drawn").

11